## 20813

James L. O'QUINN, Corrine S. Johnson, Virginia K. Baird, Bobo Enterprises, Inc., Ross H. Carnes, Jack A. Fallaw, Michael L. M. Jordan, D. C. Peterson, Wilbert Roller, Sr., Davis Smith, for themselves and all others similarly situated, Appellants-Respondents, v. BEACH ASSOCIATES, Respondent-Appellant.

(249 S.E. (2d) 734)

*James M. Herring,* of *Corish & Smith,* Hilton Head Island, *for appellants-respondents.*

*F. Mikell Harper,* of *Harper & McDonald,* Beaufort, and *John L. Creson,* of *Hull, Towill, Norman, Barrett & Johnson,* Augusta, Ga., *for respondent-appellant.*

*A. Hoyt Rowell, III,* Charleston, *Chairman of S. C. Trial Lawyers Association, amicus curiae.*

November 20, 1978.

GREGORY, Justice:

James L. O'Quinn and others entered into individual contracts with Beach Associates for the purchase of condominium units at Hilton Head Island. This class action was brought by O'Quinn to rescind the contracts because of allegedly fraudulent misrepresentations made by Beach Associates in connection with the sale of the condominiums. The lower court held the members of the class were entitled to rescission and the return of their deposits. We affirm.

In a subsequent order the lower court denied class membership to several purchasers who were not notified of the class action at the initiation of the lawsuit. We reverse.

On appeal from an order in an action in equity, tried by the lower court without a reference, this Court has jurisdiction to make findings of fact in accordance with its own view of the preponderance of the evidence. *Metromont Materials Corp. v. Pennell,* 270 S. C. 9, 239 S. E. (2d) 753 (1977). *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976).

Beach Associates is a partnership formed by two corporations: Comprehensive Ventures, Inc., and Allen-White, Inc. In the spring of 1973 Beach Associates initiated the development of an ocean front condominium project on Hilton Head Island and retained Sea Pines Plantation Company as marketing agent for the project.

Beach Associates procured construction financing for the project from North Carolina National Bank, conditioned on Beach Associates preselling forty percent (40%) of the condominium units prior to the start of construction.

Beach Associates then obtained a two year commitment from First Federal Savings and Loan of Beaufort to finance the purchase of individual condominium units for qualified purchasers. Under the terms of this commitment, First Federal agreed to provide seventy-five percent (75%) permanent financing for twenty-five (25) years up to a cumulative total of $4,500,000. During the first year of the commitment, or until May 1, 1974, all financing would be at eight and one quarter percent (8¼%) interest. During the second year of the commitment, or until May 1, 1975, all financing would be at the then prevailing market interest rate.

Construction on the project was scheduled to start on August 15, 1973 and to be completed on December 15, 1974. Thus, the project was scheduled to be completed sometime during the second year of First Federal's financing commitment.

Under the express terms of the contracts entered into by O'Quinn and the other members of the class with Beach Associates, the condominium units would be completed within

a two year period. No closings on individual units would be effected until the total project was completed.

Through its marketing agent Beach Associates represented to each prospective purchaser that seventy-five percent (75%) financing at eight and one quarter percent (8¼%) interest would be available at closing.

O'Quinn and the other members of the class entered into their respective purchaser agreements before and during October 1973. As required by the purchase agreements, each purchaser paid ten percent (10%) of the purchase price to Beach Associates as a down payment. In late October 1973 Beach Associates informed all purchasers that the interest rate at closing would not be eight and one quarter percent (8¼%) as represented, but would be the prevailing market rate at the time of closing.

Several purchasers corresponded with Beach Associates in connection with the financing representation but no satisfactory arrangement was reached. Finally, on March 6, 1975 this lawsuit was initiated by service of a summons, complaint not served.

On March 20, 1975 Beach Associates informed all purchasers that the units would be ready for closing in the near future and that financing was available through First Federal at eight and seven eights percent (8⅞%) interest. By subsequent letter dated April 23, 1975 all purchasers were notified that Beach Associates had made arrangements for financing through First Federal at eight and one quarter percent (8¼%) interest. The complaint in this action was mailed to Beach Associates on April 24, 1975 and service was accepted on April 30, 1975.

The condominium project was completed in May 1975 and the first closings on individual units were in June 1975 with financing from First Federal at eight and one quarter percent (8¼%) interest.

O'Quinn's complaint alleges four causes of action:

(1) The first cause of action alleges that Beach Associates' offering of these condominium units constituted the offering of unregistered "investment contracts" within the meaning of this term as used in the definition of "Security" in Section 35-1-20(12), 1976 Code of Laws of South Carolina in violation of Section 35-1-810, 1976 Code. By this cause of action O'Quinn sought the statutory relief specified in Section 35-1-1490, 1976 Code.

(2) The second cause of action alleges that each member of the class contracted to purchase a condominium unit in reliance on Beach Associates' misrepresentation concerning the availability of financing at eight and one quarter percent (8¼%) interest. The complaint alleges that this was a fraudulent misrepresentation. By this cause of action O'Quinn sought the rescission of the contracts and the return of all deposits.

(3) The third cause of action is based on the first two causes of action and alleges that Beach Associates made fraudulent misrepresentations in connection with the offering or sale of investment contracts in violation of Section 35-1-1490. By this cause of action O'Quinn asked for the same relief sought by the first cause of action.

(4) The fourth and final cause of action alleges that all parties mistakenly believed that financing at eight and one quarter percent (8¼%) interest would be available at closing. The complaint alleges this belief constituted a mutual mistake of material fact. By this cause of action O'Quinn asked for the same relief sought by the first cause of action.

Beach Associates demurred to the complaint on the following grounds:

(1) That the complaint failed to state a cause of action;

(2) That there was a defect of parties by reason of O'Quinn's failure to name Sea Pines as a defendant; and

(3) That the complaint failed to state facts sufficient to constitute a class action.

By subsequent motion O'Quinn moved to have the action certified a class action under Section 15-5-50, 1976 Code.

Following a hearing in Beaufort County on both the demurrer and the motion, the Honorable Clyde A. Eltzroth overruled Beach Associates' demurrer and certified O'Quinn's action a proper class action. Judge Elztroth required Beach Associates to furnish a list of all purchasers to the clerk of court so that the members of the class could be notified of the class action. No appeal was taken from this order by either party.

Beach Associates then answered the complaint by alleging as follows:

(1) A general denial;

(2) That financing at eight and one quarter percent (8¼%) interest was available at closing as represented; and

(3) That the Statute of Frauds barred the use of any oral representations to invalidate the purchase contracts.

The case was heard on the merits by the Honorable George F. Coleman, Jr. during the July 1976 term of the Beaufort County Court of Common Pleas.

By order dated March 18, 1977 Judge Coleman held as follows:

(1) That Judge Eltzroth's certification of the action as a class action was the law of the case;

(2) That each member of the class was not required to offer proof of his reliance on Beach Associates' misrepresentation concerning the availability of financing at eight and one quarter percent (8¼%) interest;

(3) That Beach Associates' offering of the condominium units did not constitute the offering of "investment contracts" within the meaning of this term as used in the definition of "Security" in Section 35-1-20(12).

(4) That there was no mutual mistake regarding the availability of financing at eight and one quarter percent (8¼%) interest because Beach Associates was aware of the falsity of the representation;

(5) That Beach Association made fraudulent misrepresentations to the members of the class regarding the availability of financing at eight and one quarter percent (8¼%) interest;

(6) That the Statute of Frauds did not bar the introduction of evidence concerning representations made outside the written contract; and

(7) That the members of the class were entitled to the rescission of the contracts and the return of all deposits.

On April 23, 1977 four persons who had contracted with Beach Associates for the purchase of a condominium but who had not been notified of the class action petitioned Judge Coleman and asked to be given the opportunity to participate in the class action. Judge Coleman denied the petition by order dated May 27, 1977.

Both O'Quinn and Beach Associates have appealed.

# I

Beach Associates first contends the lower court erred by holding that the members of the class were entitled to the rescission of the contracts and the return of all deposits. The lower court granted this relief to the members of the class after finding that Beach Associates committed constructive fraud in connection with the financing representation.

Constructive fraud was defined by this Court in *Greene v. Brown,* 199 S. C. 218, 19 S. E. (2d) 114 (1942) as follows:

Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.

Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. An intent to deceive is an essential element of actual fraud. The presence

or absence of such an intent distinguishes actual fraud from constructive fraud. (citation omitted) 19 S. E. (2d) 116.

To establish constructive fraud all elements of actual fraud except the element of intent must be established.

Beach Associates does not deny the existence of constructive fraud but argues that O'Quinn and the members of the class did not sustain any damage as a direct and proximate result of the fraud because the misrepresentation was cured on or before the time for performance. Beach Associates contends that because financing at eight and one quarter percent ($8\frac{1}{4}\%$) interest was available as promised at the time of closing, each member of the class received what he bargained for.

It is true that an action for either rescission or damages based on a fraudulent misrepresentation will not exist in the absence of damages occasioned by the fraud. See, *e.g., Warr v. Carolina Power & Light Co.,* 237 S. C. 121, 115 S. E. (2d) 799 (1960); *Turner v. Carey,* 227 S. C. 298, 87 S. E. (2d) 871 (1955). Ordinarily the innocent party to the agreement does not discover the fraud until performance, at which time he has been damaged to the extent he does not receive the full benefit of his bargain. In these cases the innocent party may either rescind the contract or affirm the contract and recover his damages.

Here, however, the fraud was discovered while the contracts remained executory. Beach Associates informed each purchaser in late October 1973 that the representation regarding the availability of financing at eight and one quarter percent ($8\frac{1}{4}\%$) interest was false. "Fraud renders all contracts voidable," *Metropolitan Life Ins. Co. v. Stuckey,* 194 S. C. 469, 10 S. E. (2d) 3 (140), and where, as here, the fraud is discovered while the contract remains executory, equity will not require the defrauded party to wait until the time of performance to seek rescission. See: *Owen v. Schwartz,* 85 U. S. App. D. C. 302, 177 F. (2d) 641, 14 A.L.R. (2d) 1337 (149).

Although Beach Associates ultimately cured or made
■ good on their fraudulent misrepresentation by provid-
ing eight and one quarter percent (8¼%) interest
financing at the time of closing. O'Quinn and the other mem-
bers of the class notified Beach Associates of their desire to
rescind the contracts before Beach Associates took any ac-
tion to provide eight and one quarter percent (8¼%) in-
terest financing. The initiation of this lawsuit by service of
the summons on March 6, 1975 provided timely notice to
Beach Associates of the rescission and rendered any subse-
quent cure ineffective. See: Section 15-3-10, 1976 Code;
Section 15-9-10; *Raines v. Poston,* 208 S. C. 349, 38 S. E.
(2d) 145 (1946) (the function of the summons is to bring
the defendant within the jurisdiction of the court and to give
him notice of the action); *Davis v. Cordell,* 237 S. C. 88,
115 S. E. (2d) 649 (1960) (party intending to rescind
much give prompt and unequivocal notice of intent); 17A
C.J.S. *Contracts* § 435, 17 Am. Jur. (2d) *Contracts* § 509
(commencement of lawsuit is sufficient notice of intent to
rescind.)

Beach Associates finally contends the lower court
■ erred by refusing to require each member of the class
to prove individual reliance on Beach Associates'
representation concerning the availability of financing at eight
and one quarter percent (8¼%) interest.

This action was certified a class action by the lower court
under Section 15-5-50 and no appeal has been taken from that
certification. Whether right or wrong, the lower court's certi-
fication is now the law of the case, *Priester v. Brabham,* 230
S. C. 201, 95 S. E. (2d) 167 (1956), and we must consider
this as a proper class action. *Meyerson v. Malinow,* 231 S. C.
14, 97 S. E. (2d) 88 (1957).

The very purpose of a class action is to avoid the neces-
sity of requiring each member of the class to prove the ele-
ments of the cause of action. Were we to accept Beach Asso-
ciates' argument and require separate proof from each mem-

ber of the class, the action would be converted, for all practical purposes, from a class action under Section 15-5-50 to an action under 15-5-20 where several parties having an interest in the subject of the action may be joined as plaintiffs.

We view this argument as an attempt by Beach Associates to collaterally attack the class action certification. Since no appeal was taken from the certification order Beach Associates will not now be heard to complain.

## II

O'Quinn and the members of the class argue the lower court erred by failing to hold that Beach Associates' offering of the condominium units constituted the offering of unregistered investment contracts in violation of Section 35-1-810.

The United States Supreme Court defined the term "investment contract" in *Securities and Exchange Commission v. W. J. Howie Co.,* 328 U. S. 293, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946) as:

. . . a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . 328 U. S. at 298-299, 66 S. Ct. at 1103.

The statement in the above quotation that in an investment contract the investor relies solely on the efforts of the promoter or another is not taken as a literal requirement of the test. Courts that have considered the question have generally held that investment contracts may be found where the investor has duties that are nominal and insignificant or where the investor lacks any real control over the operation of the enterprise. See cases collected in *Fargo Partners v. Dain Corp.,* 540 F. (2d) 912 (8th Cir. 1976).

Here, Beach Associates did no more than offer rental managerial services to any purchaser who desired to place his condominium unit on the rental market. No purchaser was required to accept these services and even if the man-

agerial service were purchased along with a condominium, the purchaser still retained ultimate control over the condominium. This is not a case where the investor was required to put up his money and then sit back while nature and the promoter took their courses. "Under these circumstances an essential prerequisite for the existence of an investment contract—substantial reliance on the efforts of the seller or third parties for a return on the investment—is lacking." *Fargo Partners v. Dain Corp., supra* at 915.

■ O'Quinn and the members of the class next contend the lower court erred by refusing to permit an expert witness to testify as to whether Beach Associates' offering would constitute the offering of investment contracts under applicable federal law. Judge Coleman made the following statement when he refused to permit the witness, Charles R. McCarthy, Jr., to testify:

The Court: Gentlemen, I'm not going to permit Professor McCarthy to respond to the question. . . . I am required to make decisions in accordance with what I believe to be the law of this state and I know of no precedent, Mr. Herring, for permitting . . . no case law that I know of in South Carolina that would permit an expert witness and I accept Professor McCarthy's qualification as an expert witness to testify from this witness stand and by so testifying to give his interpretation of the law that would appertain in this case, that's what you are asking Professor McCarthy to do. *You are asking Professor McCarthy to relate to this Court his understanding and his interpretation of the law that would be applicable to the facts and issues here. And I know of no authority in this state nor statute or by the case law which permits that to be done.* This Court has a responsibility to determine the law involved in this case, and in my judgment that responsibility would be diminshed if this Court would permit evidence into the record of this case by an expert witness as to what the law is in this case. (Emphasis added.)

The testimony of Mr. McCarthy was offered to establish a conclusion of law within the exclusive province of the court and thus was properly excluded. 32 C. J. S. *Evidence* § 453; 31 Am. Jur. (2d) *Expert and Opinion Evidence* § 69.

Subsequent to Judge Coleman's order of March 19, 1977 deciding the merits of this case, several purchasers who had not been notified of the pending class action petitioned the court to be included as members of the class. Judge Coleman found these purchasers were not notified of the action because their names were not on the list of purchasers supplied to the court by Beach Associates, but denied them membership in the class.

Ordinarily a class should consist only of those persons who elect before trial to be bound by the court's decision. Here, however, several purchasers were not given the opportunity to elect to be bound by the court's decision. The lack of notice to these purchasers was occasioned by the fault of Beach Associates, not by the fault of the purchasers. Under these circumstances, we are of the opinion these several purchasers should be admitted as members of the class.

Accordingly, the order of the lower court awarding O'Quinn and the members of the class rescission and the return of their deposits is affirmed, and the order refusing to enlarge the membership of the class is reversed.

Affirmed in part, reversed in part.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.