569 S.E.2d 318

**Roderick L. GREEN, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**No. 25515.**

Supreme Court of South Carolina.

Submitted April 17, 2002.

Decided Aug. 12, 2002.

Rehearing Denied Sept. 17, 2002.

---

Capers G. Barr, III, of Charleston, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Deputy Attorney General B. Allen Bullard, Jr., and Assistant Attorney General Douglas E. Leadbitter, all of Columbia, for respondent.

Justice BURNETT.

A jury convicted Roderick L. Green ("Green") of armed robbery of a restaurant. The court sentenced him to fifteen years' imprisonment. He did not appeal.

Green filed an application for post-conviction relief ("PCR") alleging ineffective assistance of counsel and asking for a belated appeal. Although the PCR court denied the ineffective assistance of counsel claim after a hearing, it granted a belated review of his direct appeal issues.

This Court granted review pursuant to *White v. State*[1] and affirmed Green's conviction. We also granted certiorari to review the ineffective assistance of counsel issues. We affirm.

### FACTS

An armed robbery was committed at a restaurant in Georgetown, South Carolina. The perpetrators were a woman and a man armed with a revolver. A restaurant employee identified the female robber, Sakina McKenith ("McKenith"), in a photographic lineup.

McKenith pled guilty to the armed robbery and an unrelated crack cocaine offense and received a State-recommended sentence.[2] In exchange, McKenith agreed to testify against Green, her accomplice.

---

1. 263 S.C. 110, 208 S.E.2d 35 (1974).

2. The State recommended a sentence of ten years for armed robbery and a concurrent sentence for possession of crack cocaine.

At trial, a restaurant employee testified the female robber appeared to be the same person who ordered a sandwich at the walk-up window an hour before the robbery. Another employee confirmed McKenith, the mother of his son, ordered a sandwich at the walk-up window. At the time, McKenith told him she was with "Donny." The employee testified he knew Donny, but Donny was not the male robber.[3]

McKenith testified she told the male employee she was driving Donny's car, but stated at trial Green was her accomplice in the robbery. After giving an account of the robbery, McKenith further testified she and Green went to his aunt's mobile home after the robbery to count the money.

Latoya Williams ("Williams"),[4] a visitor of Green's aunt, corroborated McKenith's testimony of McKenith's and Green's return to the aunt's mobile home. Williams stated the two were in a room, with the door closed, and were heard saying "Yeah, yeah, we did it." She stated seeing Green and McKenith exit the room with a garbage bag.

Donny Green ("Donny"), petitioner Green's cousin, admitted Green borrowed his white car and drove with McKenith to the restaurant. Donny testified, however, Green returned alone around 10:00 to 10:15 P.M., before the time of the robbery. His testimony contradicted his previous statement to police which contained a time-frame of 10:30 to 11:00 P.M., the approximate time of the robbery.

Green did not testify, but called Katrina Yates ("Yates") as a witness. Yates testified to being incarcerated with McKenith at the county jail. Yates stated McKenith, before she agreed to a plea bargain, had told her Green was not the person who helped her commit the robbery.

At the conclusion of the presentation of evidence, but before closing arguments, Green's counsel moved to remove a juror because he was Mayor of the City of Georgetown. Counsel asserted the Mayor would be unable to serve as an impartial

---

3. According to the male employee's testimony, he was never able to view the female robber and only had direct contact with the armed male robber.

4. Williams admitted, on cross-examination, she smoked crack cocaine earlier on the evening of the robbery.

juror in a case because he was responsible for hiring and firing members of the police department. The trial judge removed the Mayor from the jury.

Although instructed not to consider Green's exercise of his right not to testify, the jury, twenty minutes after deliberations began, sent the following note to the trial judge:

Trial Court: Alright, we have received a question from the jury and it's as follows: "We were told we should not discuss the Defendant's choice not to testify. If that is discussed is it a mistrial? If so, how could our deliberations be" and I think the word is "renewed or revived?"

After discussion, the State and Green's counsel agreed to a curative instruction. The trial court then re-instructed the jury the State had the burden to prove Green's guilt and the jury was not to consider, in any way, his exercise of the right not to testify.

Approximately three hours after receiving the court's latest instruction, the jury sent a message stating "Hung." The judge, without objection from the Green's counsel, issued the following *Allen*[5] instruction to the jury:

Its not always easy for even two persons to agree. Therefore, I understand when 12 persons must agree it becomes much more difficult, but it is important that litigation and this case's litigation be ended. In this case it is a General Sessions case. If it can be ended without a single one of you doing violence to your conscience, it's your duty as jurors to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for himself or herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.

In the course of your deliberations do not hesitate to reexamine your own views and change your opinion if convinced that your opinion is erroneous. No juror is expected to give up his or her opinion based on reasoning satisfactory to yourself merely for the purpose of being in agreement, and I want you to understand that and do not

---

5. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

surrender your honest convictions as to the weight or the effect of the evidence solely because the opinion of your fellow jurors is contrary to your opinion or for the mere purpose of returning a verdict.

. . . .

It has never been intended that the verdict of a jury should be the verdict of any one person. On the other hand, the verdict of the jury is the collective reasoning of all persons put together. The reason we have a jury is so that we might have the benefit of the collective thought and collective reasoning of the jury. It may help to tell the other jurors how you feel about the case and why you think as you do as I am sure that you have been doing.

On the other hand, it may help if other jurors exchange views with you and I ask that you listen to each other and give the other thought such meaning as you think they should have.

. . . .

Now, I'm going to ask that you, again, retire to your jury room for further deliberations and see if you can write a verdict in this case, and let me close by reminding you again that while it's important that this case be ended, it should be ended in the form of a verdict without any juror doing violence to his or her own conscience. No juror is expected to give up an opinion based on reasoning satisfactory to himself merely for the purpose of being in agreement.

The jury returned a verdict nearly two hours following the *Allen* instruction. When asked by the court whether it had reached a verdict the foreman replied, "We have reluctantly, yes." The jury found Green guilty. Trial counsel did not ask the court to poll the jury.

### ISSUES

I. Was trial counsel ineffective for failing to move for a mistrial after the jury advised the trial court it discussed Green's failure to testify during deliberations?

II. Was trial counsel ineffective in failing to object to the *Allen* charge?

III. Was trial counsel ineffective for failing to request the trial court poll the jury?

IV. Was trial counsel ineffective because of cumulative errors?

V. Did the PCR court err by not admitting a trial attorney's expert opinion on whether trial counsel's conduct fell below generally accepted standards of competency?

## ANALYSIS/DISCUSSION

There is a strong presumption trial counsel provided adequate assistance. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). To prove ineffective assistance of counsel, the applicant must show trial counsel's performance fell below an objective standard of reasonableness and, but for counsel's errors, there is a reasonable probability the result at trial would have been different. *See Strickland v. Washington, supra; Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is one sufficient to undermine confidence in the trial's outcome. *See Strickland v. Washington, supra.* This Court sustains the PCR court's factual findings and conclusions of law drawn from them as long as there is any probative evidence to support those findings. *See Cherry v. State, supra.*

## I

### Counsel's Failure to Move for a Mistrial

At his PCR hearing, Green asserted his trial counsel provided ineffective assistance because he failed to move for a mistrial after the jury sent its note referring to Green's failure to testify. The PCR court denied Green's contention finding, first, Green made the decision to select a curative instruction, and, second, counsel's advice was permissible trial strategy. We agree.

At the PCR hearing, Green's mother, Anita Brown ("Brown"), testified counsel informed her and her husband Green had grounds for a mistrial. However, trial counsel believed a mistrial was not necessary because Green had a "good" jury more likely to acquit. Brown's husband confirmed her testimony. Green testified trial counsel advised

him to not request a mistrial because he had a good jury. Instead, counsel suggested a curative instruction because Green had a good chance at acquittal.

Trial counsel's testimony at the PCR hearing corroborated much of the Browns' and Green's statements. He stated he conferred with Green several times, questioning him about the decision to obtain a curative instruction, and talked with the Browns about their son's options.

Further, counsel informed Green and his family the State could seek enhanced punishment in a new trial. The State, apparently, was unaware Green had a prior robbery offense in Florida until the trial began. The State informed trial counsel during deliberations it would seek a sentence of life without parole due to Green's robbery record in Florida if there were a new trial. Due to the possibility of enhanced punishment and his belief Green had a good jury, trial counsel admitted he thought they should ask for a curative instruction.

Green, at trial, requested the curative instruction instead of a mistrial. Therefore, there is evidence in the record to support the PCR court's findings. *See Cherry v. State, supra* (this Court will sustain the PCR court's holding as long as there is any probative evidence in the record to support its findings). Further, the possibility of an enhanced punishment coupled with counsel's belief Green had a favorable jury constitutes reasonable trial strategy not to request a mistrial. *Stokes v. State,* 308 S.C. 546, 419 S.E.2d 778 (1992) (where counsel articulates valid reasons for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel).

Assuming, *arguendo,* trial counsel provided ineffective assistance, the error was not prejudicial. Green asserts the error undermines the confidence in the verdict because, if a mistrial were granted, this particular jury could not have found Green guilty, thus the error was prejudicial. Further, Green claims he would be in a significantly better position in a retrial because he would be able to have "more effective cross-examination and responsive argument to the State's case," and McKenith "would have been into the service of her ten year prison term, for which she had erroneously believed that she would have been paroled [earlier than what she was actually

eligible for, making it] more likely than not that she would be a less than enthusiastic witness at retrial."

Although Green's trial strategy could be more effective in a retrial following a "trial run," his arguments are theoretical assumptions at best. They are not sufficient to cast doubt on the jury's verdict, especially coupled with the relative strength of the case against him.

## II

### Failure to Object to an *Allen* Charge

■ Green argues trial counsel's failure to object to the *Allen* charge was ineffective assistance which prejudiced him by coercing the jury to render a guilty verdict. Green asserts this Court should adopt the standard articulated by the United States Court of Appeals for the Fourth Circuit in *United States v. Burgos*, 55 F.3d 933 (4th Cir.1995). The PCR court found the trial court's *Allen* charge did not violate Green's rights. Additionally, the PCR court found any decision not to seek a mistrial was valid trial strategy. We agree.

The *Burgos* charge, applicable to federal courts in South Carolina, requires "a district court [to] incorporate a specific reminder both to jurors in the minority and those in the majority that they reconsider their positions in light of the other side's views." *Id.* at 941. While we do not adopt *Burgos*, this Court has continually mandated a neutral application of the *Allen* charge.

■ In South Carolina state courts, an *Allen* charge cannot be directed to the minority voters on the jury panel. *State v. Elmore*, 279 S.C. 417, 308 S.E.2d 781 (1983). Instead, an *Allen* charge should be even-handed, directing both the majority and the minority to consider the other's views. *See State v. Hughes*, 336 S.C. 585, 521 S.E.2d 500 (1999). A trial judge has a duty to urge, but not coerce, a jury to reach a verdict. *State v. Pauling*, 322 S.C. 95, 470 S.E.2d 106 (1996). It is not coercion to charge every juror has a right to his own opinion and need not give up the opinion merely to reach a verdict. *State v. Singleton*, 319 S.C. 312, 460 S.E.2d 573 (1995).

The *Allen* charge given to the jury below was not "coercive instruction, focused on the position of the minority juror," as Green suggests. To support his conclusion, Green argues each use of the word "you" in the charge was "terribly coercive" to the minority jurors.

A fair reading of the actual jury charge does not support Green's interpretation. The entire charge shows the trial judge adequately and correctly told the jurors they should listen to what the other side had to say; to be open to change one's mind; and to not change one's mind if it would do violence to one's conscience. The charge was neutral in its direction, not impermissibly aimed at the minority, instead suggesting members of each side examine their own position in light of the other view's position.

Assuming trial counsel was ineffective in failing to object to the *Allen* charge, there is nothing in the record to suggest the minority view was favorable to Green. Green submitted no evidence to suggest the minority wished to acquit him. One may speculate just as freely the minority view at that juncture of deliberations wished to convict Green. We acknowledge this is mere speculation, which is, at its heart, a fatal flaw in Green's argument. Even if the *Allen* charge were coercive toward the minority view, Green fails to show the minority wished to acquit. Additionally, he fails to show prejudice by counsel's failure to object. *Johnson v. State, supra.*

There is evidence in the record supporting the PCR court's ruling. *See Cherry v. State, supra.*

## III

### Failure to Poll the Jury

Green asserts "two red flags were waved in the face of trial counsel when the jury returned to the courtroom to report their verdict: a crying juror, and a foreman announcing they had reached a verdict 'reluctantly.'" Brown, Green's mother, testified at the PCR hearing to observing a juror crying when the jury returned with a verdict. Trial counsel testified he did not believe he had an obligation to poll the jury and he did not observe any juror crying.

The PCR court, in finding trial counsel was not ineffective for failing to request the jury be polled, refused to speculate what the jury poll would be. The PCR court also found the foreman's statement the jury reached its verdict "reluctantly" was not indicative of any error. We agree.

A trial judge polls the jury to ensure the verdict is unanimous. *State v. Linder,* 276 S.C. 304, 278 S.E.2d 335 (1981). A trial judge is not required to conduct a jury poll if the court is satisfied the verdict is unanimous. *Id.* A trial judge must conduct a jury poll if requested by either party. *Id.*

Trial counsel had no affirmative duty to request the trial judge poll the jury. Further, Green desires this Court speculate what the foreman meant when he said "reluctantly." The foreman may have been expressing the jury's reluctance in finding Green guilty. The foreman may have been merely noting the jury had reached a verdict slowly after several hours of deliberations and becoming deadlocked at one point.

Green concedes he is unable to argue the outcome would be different if the court polled the jury, but argues trial counsel's failure to request a jury poll falls below an objective standard of competence. Assuming, *arguendo* trial counsel's failure to request a jury poll falls below an objective standard of competence, Green admits he is unable to show how he was prejudiced. The evidence supports the PCR court's findings. *See Cherry v. State, supra.*

## IV

### Cumulative Errors

Green argues the cumulative effect of trial counsel's errors, including accepting the Mayor as a juror, constitute ineffective assistance of counsel.

Although Green must ordinarily show actual prejudice, he may be relieved of that burden if counsel's ineffectiveness is so pervasive as to render a particularized prejudice inquiry unnecessary. *Frett v. State,* 298 S.C. 54, 378 S.E.2d 249 (1988).

■ Green must show more than the fact trial counsel committed errors; he must show the errors adversely affected his right to a fair trial. *State v. Johnson*, 334 S.C. 78, 512 S.E.2d 795 (1999). Whether the cumulation of several errors, which by themselves are not prejudicial, would warrant relief is an unsettled question in South Carolina. *Compare State v. Peterson*, 287 S.C. 244, 335 S.E.2d 800 (1985) (cumulation of errors warranted reversal, but Court also found each individual error caused prejudice), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991), *with State v. Freeman*, 319 S.C. 110, 459 S.E.2d 867 (Ct.App.1995) (finding multiple errors, which were not prejudicial separately, could be prejudicial to deny an individual a right to a fair trial when they were viewed together). The facts of this case do not give this Court an opportunity to settle such a question.

■ The PCR court, addressing the Mayor-juror issue, noted the issue was moot since the juror was removed prior to deliberations. Additionally, the PCR court found Green, according to counsel's testimony, wanted to seat the Mayor over trial counsel's contrary advice. We accept the PCR judge's determination Green desired to seat the Mayor. *See Foye v. State*, 335 S.C. 586, 518 S.E.2d 265 (1999) (this Court gives great deference to a PCR judge's findings, especially where witness credibility is at issue, because we lack the opportunity to directly observe such testimony). Further, assuming trial counsel committed error, Green failed to show how he was prejudiced when the Mayor was removed before jury deliberations began.

While it is unsettled law whether individual errors, which may not be independently prejudicial, may be prejudicial when taken as a whole, we recognize the threshold to asking the cumulative prejudicial question is to first find multiple errors. Multiple errors do not exist in this case to form any cumulative prejudicial effect.[6]

---

6. Green includes trial counsel's failure to file an appeal on his behalf as part of his cumulative error argument. However, because this Court granted Green a belated review this single instance of trial counsel error does not lend support to his argument. Cumulative prejudicial effect cannot come from one error.

## V

### Admission of Expert Opinion Testimony
### at the PCR Hearing

At the PCR hearing, Green proffered opinion testimony from a criminal defense attorney as an expert on whether trial counsel's performance had been deficient. Green argues Rule 702, SCRE, obligates the PCR judge to admit expert opinion testimony by a trial attorney to assist the trier of fact, because, although the trier of fact may be an experienced trial judge, the judge may not be aware of considerations of criminal defense trial tactics and strategies. The PCR court found the testimony was not relevant and, even if relevant, would not have affected the judge's decision.

Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. An expert may testify if such "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Rule 702, SCRE; *see also Knoke v. South Carolina Dep't of Parks,* 324 S.C. 136, 478 S.E.2d 256 (1996).

The expert offered no factual evidence. He proffered his opinion, assuming certain facts, trial counsel's actions fell below acceptable legal standards of competence. The testimony was not designed to assist the PCR court to understand certain facts, but, rather, was legal argument why the PCR court should rule, as a matter of law, trial counsel's actions fell below an acceptable legal standard of competence. Such "testimony" falls outside of Rule 702, SCRE.

### CONCLUSION

For the foregoing reasons, we AFFIRM.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.