580 S.E.2d 433

Lamar W. DAWKINS and George W. Chisholm, Respondents,

v.

Richard E. FIELDS; Louis O. Dore; Margaret W. Lesesne, Personal Representative of the Estate of Theodore Lesesne; Mildred Bobo, Personal Representative of the Estate of William Bobo; Herbert A. DeCosta, Jr., Juanita J. Washington; Richard N. Whitney; R.M. Stiney, Jr.; James Vickers; Agatha Cooper; Harold Lesesne; DIA–Dick Realty Company; and Seaside Development Corporation, Petitioners.

No. 25624.

Supreme Court of South Carolina.

Heard Jan. 23, 2003.
Decided April 7, 2003.
Rehearing Denied May 29, 2003.

60

Stephen P. Groves, Sr., John Hamilton Smith, Sr., Stephen L. Brown, of Young, Clement, Rivers & Tisdale, L.L.P., of Charleston, for Petitioners.

Blaney A. Coskrey, III, and Wilmot B. Irvin, both of Columbia, for Respondents.

ON WRIT OF CERTIORARI TO
THE COURT OF APPEALS

JUSTICE WALLER:

This Court granted the petition for a writ of certiorari to review the Court of Appeals' opinion in *Dawkins v. Fields*, 345 S.C. 23, 545 S.E.2d 515 (Ct.App.2001). We reverse.

## FACTS/PROCEDURAL HISTORY

Respondents Lamar W. Dawkins and George W. Chisholm, shareholders of Seaside Development Corporation (Seaside), brought suit against Seaside's directors and officers and a shareholder corporation, alleging common law breach of fiduciary duty, violation of statutory standards for directors, corporate oppression, and violation of preemptive rights. The trial court granted petitioners' motion for summary judgment. Dawkins and Chisholm appealed, and the Court of Appeals reversed and remanded. *Dawkins, supra.*

Seaside was formed in 1959 for the purpose of acquiring and holding real property on Hilton Head Island. Seaside purchased a large tract of land along Burkes Beach Road. The intent was to subdivide the land on the north side of Burkes Beach Road for individual residential purposes but to keep intact, and eventually sell, the 18–plus acres on the south side. In January 1996, Seaside agreed to sell the south side tract to the Town of Hilton Head Island for $1.2 million.

Respondents allege in their complaint that Seaside's directors schemed to increase their proportional interest in the shares of the corporation. Respondents challenge the propriety of three different stock issuances—180 shares in August 1995, 205 shares in January 1996, and 330 shares in July 1996. Respondents allege the share price, although issued at the par value of $100, was "grossly inadequate" and that the authorization of the stock sales was without an appropriate business purpose. Respondents contend that Seaside's directors failed to adequately disclose the nature of the transactions thereby diluting other shareholders' rights in the corporation. In addition, respondents maintain that as part of the scheme, Seaside declared a 100% dividend on all shares in September 1996 and again in October 1997.

Respondents filed their complaint in July 1998. Within four months of the complaint being filed, the trial court heard argument on the summary judgment motion. During that time, respondents filed discovery requests, moved to compel discovery, and also moved for a continuance.[1] On November 16, 1998, the trial court heard petitioners' summary judgment motion and respondents' continuance motion. On this same day, petitioners answered respondents' discovery requests.

In support of their motion for summary judgment, petitioners submitted an affidavit from petitioner Richard E. Fields[2] and an "exhibit book" which contained numerous corporate documents supporting their motion. According to the Fields affidavit, both respondents were notified of the stock sales. The documents in the exhibit book showed that Seaside had several debt obligations, including taxes on the property and Dawkins' mortgage on part of the property, which it wanted to satisfy by selling stock. In opposition to the motion for summary judgment, respondents submitted their verified complaint and the affidavit of Professor John Freeman, a law professor and expert in corporations and securities.

In April 1999, the trial court denied respondents' motion for a continuance and granted summary judgment for petitioners. The trial court refused to consider respondents' expert affidavit, concluding the affidavit contained legal opinions and conclusions rather than specific facts. Regarding the motion for continuance, the trial court decided "further discovery by [respondents] is not likely to create a genuine factual issue for trial."

Respondents moved to alter or amend the order, arguing that, *inter alia*, the trial court erred in (1) excluding the expert affidavit, and (2) failing to consider their verified complaint as an affidavit for purposes of the summary judgment motion. In denying this motion, the trial court concluded that the verified complaint was not an appropriate substitute for an affidavit and, in any event, contained merely conclusory allegations. Regarding the expert affidavit, the

---

1. Respondents wanted the trial court to continue the hearing for summary judgment, or deny the summary judgment motion as premature, because they had not yet had an opportunity to conduct discovery.

2. Fields is Seaside's president and chairman of the board.

trial court concluded again that the affidavit constituted an opinion on the law which improperly invaded the trial court's own role to decide the summary judgment motion.

On appeal, the Court of Appeals reversed, finding that summary judgment was erroneously granted to petitioners. The Court of Appeals decided: (1) a verified complaint is the equivalent of an affidavit for purposes of summary judgment; (2) the trial court erred in refusing to consider Professor Freeman's affidavit; and (3) there were genuine issues of material fact. The Court of Appeals did not address respondents' argument that, because of the lack of discovery, the trial court erred in even hearing the motion for summary judgment. *Dawkins, supra.*

## ISSUES

1. Did the Court of Appeals err in finding the trial court improperly refused to consider the expert affidavit?

2. Did the Court of Appeals err in holding that a verified complaint is a proper substitute for an affidavit for purposes of summary judgment?

3. Did the Court of Appeals err in finding that genuine material issues of fact preclude summary judgment?

4. Did the trial court err in granting summary judgment for petitioners without allowing additional time for discovery?

## 1. EXPERT AFFIDAVIT

Petitioners argue the Court of Appeals erred in finding that the trial court erroneously refused to consider Professor Freeman's expert affidavit. Specifically, petitioners maintain that the affidavit was not based on personal knowledge and improperly attempted to explain the law to the trial court.

■ The rule governing summary judgment provides that "[s]upporting and opposing affidavits shall be made **on personal knowledge,** shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e), SCRCP (emphasis added). Nonetheless, "[a]n expert witness may state an opinion based on facts not within

his firsthand knowledge.... He may base his opinion on information, whether or not admissible, made available to him before the hearing if the information is of the type reasonably relied upon in the field to make opinions." *Hundley v. Rite Aid of South Carolina, Inc.*, 339 S.C. 285, 529 S.E.2d 45, 50 (Ct.App.2000) (citations omitted); *see also* Rule 703, SCRE.[3]

The Court of Appeals found that the affidavit was based on Professor Freeman's personal knowledge because he stated he had reviewed the pleadings, the summary judgment motion, and the documents petitioners submitted in support of their motion. *Dawkins*, 345 S.C. at 31, 545 S.E.2d at 519. We agree with the Court of Appeals that the "personal knowledge" requirement, as to an expert witness, was satisfied in the instant case. *See Hundley, supra.*

The Court of Appeals also concluded that the expert affidavit should have been considered by the trial court despite the fact that it contained an opinion on the ultimate issue. *Dawkins*, 345 S.C. at 31, 545 S.E.2d at 519. However, because Professor Freeman's affidavit primarily contained **legal** arguments and conclusions, we hold the trial court properly refused to consider the affidavit.

Rule 702, SCRE, provides that "[i]f ... specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." While it is true that "an opinion ... is not objectionable because it embraces an ultimate issue to be decided by the trier of fact," Rule 704, SCRE, Professor Freeman's affidavit inappropriately attempted to usurp the trial court's role in determining whether petitioners were entitled to summary judgment. *See O'Quinn v. Beach Assocs.*, 272 S.C. 95, 106–07, 249 S.E.2d 734, 739–40 (1978) (where expert testimony was offered to establish a conclusion of law, the Court held that the trial court proper-

---

**3.** Rule 703 states: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

ly excluded the testimony because that was within the exclusive province of the trial court).

▮ In general, expert testimony **on issues of law** is inadmissible. *See generally* Note, *Expert Legal Testimony,* 97 Harv.L.Rev. 797, 797 (1984); *see also Askanase v. Fatjo,* 130 F.3d 657, 673 (5th Cir.1997) (where the court disallowed a legal expert's opinion on whether corporate officers and directors breached their fiduciary duties because "[s]uch testimony is a legal opinion and inadmissible."); *United States v. Sinclair,* 74 F.3d 753, 758 n. 1 (7th Cir.1996) (commenting that Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case).

Recently, this Court decided the issue of whether expert testimony from a criminal defense attorney on whether trial counsel was deficient could be admitted at a post-conviction relief (PCR) hearing. *Green v. State,* 351 S.C. 184, 198, 569 S.E.2d 318, 325 (2002). Green argued that Rule 702 required the PCR judge to admit the expert opinion testimony. We disagreed, and stated the following:

> The expert offered no factual evidence. He proffered his opinion, assuming certain facts, [that] trial counsel's actions fell below acceptable legal standards of competence. **The testimony was not designed to assist the PCR court to understand certain facts, but, rather, was legal argument why the PCR court should rule, as a matter of law, trial counsel's actions fell below an acceptable legal standard of competence.** Such "testimony" falls outside of Rule 702, SCRE.

*Id.* (emphasis added).

*Green* is instructive to the instant case. Here, Professor Freeman's affidavit reads as if it could have been respondents' oral argument to the trial court at the summary judgment hearing. Although Professor Freeman arguably offered some helpful, factual information,[4] the overwhelming majority of the affidavit is simply legal argument as to why summary judg-

---

4. For instance, Professor Freeman offered his opinion that based on the value of the south side tract, Seaside's stock value per share was approximately $800, and therefore, selling the stock for $100 per share was improper.

ment should be denied. For that reason, we hold the trial court correctly refused to consider it, and the Court of Appeals erred in finding otherwise. *See Green, supra; O'Quinn, supra.*

## 2. VERIFIED COMPLAINT

Petitioners argue that the Court of Appeals erred in holding that respondents' verified complaint should have been allowed by the trial court as a substitute for an affidavit.

Discussing this novel issue, the Court of Appeals stated the following:

> Although our courts have not specifically addressed whether a verified complaint is the equivalent of an affidavit for purposes of summary judgment, Rule 56 of the South Carolina Rules of Civil Procedure is identical to its federal counterpart....
>
> Federal courts addressing the issue have held that for the purposes of summary judgment, a verified complaint is the equivalent of an affidavit, **provided that the verified complaint meets the requirements of Rule 56(e)**.... Likewise, numerous state courts have held that a verified complaint is the equivalent of an affidavit for summary judgment purposes.... Moreover, our review of South Carolina cases leads us to believe that such a result is consistent with South Carolina law.... Accordingly, we hold that for summary judgment purposes, a verified pleading is equivalent to an affidavit, **provided it meets the requirements of Rule 56(e)**.

*Dawkins,* 345 S.C. at 28–30, 545 S.E.2d at 518–19 (emphasis added, footnotes and citations omitted).

 We agree with the Court of Appeals' well-supported[5] conclusion that a verified complaint is an acceptable substitute for an affidavit at the summary judgment phase as long as the pleading satisfies Rule 56(e). Petitioners argue, however, that respondents' verified complaint did not meet the requirements of Rule 56(e). We agree.

---

**5.** See cases cited at *Dawkins,* 345 S.C. at 29 nn. 7 & 8, 545 S.E.2d at 519 nn. 7 & 8.

Rule 56(e) requires that affidavits: "[1] shall be made on personal knowledge, [2] shall set forth such facts as would be admissible in evidence, and [3] shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e), SCRCP. "Few pleadings will satisfy these requirements, even when verified." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2738 (1998).

In the instant case, both respondents verified the complaint as follows:

PERSONALLY APPEARED before me, [respondent's name], who being duly sworn, deposes and says: that he is one of the Plaintiffs, in the foregoing action, that he has read the within Complaint, **and that the facts are true of his own knowledge, except those matters and things therein alleged upon information and belief, and as to those, he believes them to be true.**

(Emphasis added).

■ Allegations made upon information and belief do not meet the "personal knowledge" requirements of Rule 56(e). *See, e.g., Sheinkopf v. Stone,* 927 F.2d 1259 (1st Cir.1991); *Fowler v. Southern Bell Tel. & Tel. Co.,* 343 F.2d 150 (5th Cir.1965); *Seay v. Allstate Ins. Co.,* 59 N.C.App. 220, 296 S.E.2d 30 (1982). Likewise, because of the abundance of conclusory allegations found in respondents' verified complaint, it simply is not an appropriate substitute for an affidavit. *See Sheinkopf, supra; Fowler, supra; see also* Wright, Miller & Kane, § 2738 ("ultimate or conclusory facts and conclusions of law, as well as statements made on . . . 'information and belief,' cannot be utilized on a summary-judgment motion").

In sum, we find the Court of Appeals correctly held that a verified pleading **may** substitute for an affidavit at the summary judgment phase; however, it erred in finding that respondents' verified complaint met Rule 56(e)'s requirements. *Id.* Accordingly, the trial court appropriately refused to accept respondents' verified complaint as an affidavit for purposes of summary judgment.

### 3. ISSUES OF FACT/FULL AND FAIR OPPORTUNITY FOR DISCOVERY

Petitioners argue the Court of Appeals erred in finding there were genuine material issues of fact. Respondents, on the other hand, contend the Court of Appeals correctly found there were issues of fact precluding summary judgment. Moreover, respondents argue as an additional sustaining ground that the motion for summary judgment was premature because they were deprived of a full and fair opportunity to conduct discovery.

"The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). In reviewing the grant of a summary judgment motion, the Court applies the same standard as the trial court under Rule 56(c), SCRCP: "summary judgment is proper when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' " *Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 114–15–410 S.E.2d 537, 545 (1991). In determining whether summary judgment is appropriate, the evidence and its reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* at 115, 410 S.E.2d at 545.

Summary judgment is a drastic remedy and must not be granted until the opposing party has had a full and fair opportunity to complete discovery. *Id.* at 112, 410 S.E.2d at 543. Nonetheless, the nonmoving party must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is "not merely engaged in a 'fishing expedition.' " *Id.* at 112, 410 S.E.2d at 544.

The Court of Appeals found numerous issues of fact. However, in doing so, the Court of Appeals relied heavily on Professor Freeman's opinions and likewise found the verified complaint should have been considered as an affidavit. Given our rulings above, the record before the trial court properly consisted of the pleadings, Fields' affidavit, and the accompanying "exhibit book." Our review of the record before the trial court compels a finding that summary judgment was properly granted. *See Humana Hosp.–Bayside v. Lightle,*

305 S.C. 214, 216, 407 S.E.2d 637, 638 (1991) ("Where a plaintiff relies solely upon the pleadings, files no counter-affidavits, and makes no factual showing in opposition to a motion for summary judgment, the lower court is required under Rule 56, to grant summary judgment, if, under the facts presented by the defendant, he was entitled to judgment as a matter of law.").

The record unequivocally shows that Seaside had corporate debts, properly notified its shareholders of the intent to satisfy the debts through a stock issuance, and fairly offered stock to all the shareholders. There is simply no factual support for respondents' claims; instead, all the evidence before the trial court shows that the stock was issued in good faith and for a proper business purpose. *See Roper v. Dynamique Concepts, Inc.*, 316 S.C. 131, 447 S.E.2d 218 (Ct.App.1994) (the issuance of additional shares of stock as a last ditch effort to raise capital for a financially troubled corporation was sufficient to overcome a claim of oppression because the shares had been issued in good faith).

Although we are bound to review the record in a light most favorable to respondents, "[a] court 'cannot ignore facts unfavorable to that party and [it] must determine whether a verdict for the party opposing the motion would be reasonably possible under the facts.'" *Bloom v. Ravoira*, 339 S.C. 417, 423, 529 S.E.2d 710, 713 (2000) (citation omitted). It is undisputed that Dawkins participated in meetings where these issues were discussed and received notice of the stock offerings. Likewise, the only logical inference from the record is that Chisholm either was on notice of the stock offerings, or by his own conduct, prevented himself from receiving the notice. As to the value of the stock and respondents' allegations that the stock was undervalued, we note the stock was issued at par value. In addition, respondents knew the value of the south side tract exceeded $1 million because, in the early 1990's, Seaside had received a $1.75 million offer for the land.

We find the trial court appropriately ruled that respondents failed to present any "specific facts" establishing a genuine issue for trial. Respondents are not permitted to simply rest on the allegations in their complaint, especially where, as here,

the majority of the factual allegations are conclusory in nature. *See* Rule 56(e), SCRCP ("an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

■ As to respondents' argument that summary judgment was premature because they did not have a full and fair opportunity for discovery, we hold that under the unusual circumstances of this case, the trial court appropriately granted summary judgment. *See Middleborough Horiz. Property Regime Council of Co–Owners v. Montedison S.p.A.*, 320 S.C. 470, 479–80, 465 S.E.2d 765, 771 (Ct.App.1995) (affirming summary judgment where appellants "advance[d] no good reason why four months was insufficient time under the facts of this case to develop documentation in opposition to the motion for summary judgment"). Furthermore, we agree with the trial court that further discovery was unlikely to create any genuine issue of material fact. *See Baughman*, 306 S.C. at 112, 410 S.E.2d 537, S.E.2d at 544 (nonmoving party must demonstrate that further discovery will likely uncover additional relevant evidence); *see also George v. Fabri*, 345 S.C. at 452, 548 S.E.2d at 874 (purpose of summary judgment is to dispose of cases which do not require a fact finder).

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is

**REVERSED.**

TOAL, C.J., MOORE and BURNETT, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES dissenting:

I agree with the majority that at the summary judgment phase, a verified complaint is an acceptable substitute for an affidavit, as long as the pleading satisfies Rule 56(e), SCRCP. However, I respectfully disagree that there was no genuine issue of material fact that precluded summary judgment. In

my opinion, the factual averments of respondents' verified complaint raised a genuine issue whether petitioners breached their fiduciary duty. The complaint alleged that the shares were issued for inadequate compensation. And that there was no legitimate business purpose for issuing the shares, as evidenced by the 100% dividend, returned on those shares only a few months later. I would therefore affirm the Court of Appeals.