677 S.E.2d 32

**Robert GUINAN, Appellant,**

v.

**TENET HEALTHSYSTEMS OF HILTON HEAD, INC.; Hilton Head Healthsystems, P.A. d/b/a Hilton Head Regional Medical Center; Dr. H. Kohli; and, Dr. Phillip Zitello, Respondents.**

No. 4543.

Court of Appeals of South Carolina.

Heard Feb. 18, 2009.

Decided May 7, 2009.

H. Woodrow Gooding, of Allendale, and James H. Moss, of Beaufort, for Appellant.

Andrew F. Lindemann, of Columbia, Hutson S. Davis, Jr., of Hilton Head Island, Joesph O. Brennan and Marvin W. McGahee, both of Savannah, GA, Lindsay K. Smith–Yancey, and Daniel S. McQueeney, Jr., of Charleston, for Respondents.

SHORT, J.

In this medical malpractice action, Robert Guinan appeals the master-in-equity's [1] grant of defendants' summary judgment motion, arguing substantial issues of discovery remained unresolved and Dr. Avinash Gupta's (Gupta) testimony implicated the defendants in deviations from the standard of care. We affirm.

## FACTS

Guinan suffered from neck, shoulder, and other pain, and received epidural injections of pain medication in his cervical spine on March 13, 2002, from Dr. Philip James Zitello

---

[1] The master-in-equity was sitting as a special circuit judge.

(Zitello). After the injection, Guinan began experiencing chest pains and weakness in his legs. As a result, Guinan contacted Dr. Gaston O. Perez (Perez), his family physician. Perez examined Guinan, administered some medications, and instructed Guinan to go to the emergency room at Hilton Head Regional Medical Center (Hilton Head Regional).[2] Perez contacted the emergency room and explained Guinan's relevant medical history. Additionally, Perez contacted Zitello, and Zitello agreed to meet Perez and Guinan at the emergency room.

Perez admitted Guinan into the emergency room and ordered a neurology consult. Dr. Harvinder Kohli (Kohli) performed the neurology consult and ordered the administration of a blood thinner to treat a suspected spinal cord occlusion or clot. Kohli called Memorial Health University Medical Center (Memorial Health) in Savannah, Georgia, to discuss the case with a neurosurgeon and spoke with Dr. James Lindley (Lindley).[3] Lindley suspected Guinan's symptoms were related to a hematoma (or a bleed), rather than a clot. As a result, the blood thinner was discontinued, and Guinan was transported to Memorial Health. Upon arrival, Guinan was given a MRI, which revealed the presence of a hematoma in Guinan's cervical and thoracic spine. Lindley successfully evacuated the hematoma.

Guinan brought a medical malpractice action against Hilton Head Regional, Kohli, and Zitello. Guinan alleged Hilton Head Regional: (1) failed to properly diagnose the hematoma; (2) failed to properly administer drugs; (3) administered drugs known to be or should have known to be dangerous to Guinan; (4) failed to warn Guinan of the danger presented by

---

2. Tenant HealthSystems of Hilton Head, Inc., and Hilton Head Health-Systems, P.A., d/b/a Hilton Head Regional Medical Center.

3. Kohli called Lindley on or about the time the blood thinner was being administered. The exact timing and duration of the administration of the blood thinner is highly debated between Guinan and the defendants. However, while the administration of a blood thinner to a person with internal bleeding could cause problems, there is no evidence the blood thinner had a negative effect on Guinan. Coagulation studies of his blood both before and after the administration of the blood thinner indicate Guinan's blood was normal. Additionally, Guinan's expert witness, Gupta, did not testify to the contrary. Accordingly, the exact amount of blood thinner actually administered is without consequence.

the drugs; (5) failed to require Zitello to be present in the emergency room; (6) failed to obtain a neurological consult; (7) failed to exercise the degree of care required of physicians in an emergency room setting; (8) failed to have proper diagnostic equipment available; and (9) failed to immediately transfer Guinan to Memorial Health for emergency care. As to Kohli, Guinan asserted he: (1) failed to properly diagnose the hematoma; (2) failed to properly treat Guinan; (3) increased the harm to Guinan by administering drugs he knew or should have known would harm Guinan; (4) failed to consult a neurosurgeon prior to administering the blood thinner; (5) failed to exercise the degree of care required by the circumstances; and (6) failed to immediately transfer Guinan to Memorial Health for emergency care. Lastly, Guinan claimed Zitello: (1) failed to properly administer the epidural injection; (2) failed to recognize the symptoms of a failed epidural injection; (3) failed to warn and inform Guinan of the symptoms of an epidural injection and warn Guinan of possible paralysis; (4) failed to attend to Guinan at the emergency room; (5) failed to see that Guinan was immediately sent to surgery; (6) failed to exercise the degree of care required of physicians in the profession; and (7) failed to warn and inform Guinan of the risks of an epidural hematoma and other risks of the epidural injection.

The first scheduling order in this case was dated September 7, 2005, and provided an April 15, 2006, discovery deadline. On May 26, 2006, an amended scheduling order was issued extending the deadline to June 1, 2006. After a motions hearing on July 12, 2006, a final scheduling order was issued extending the deadlines for another forty days. The scheduling order also stated the defendants could not file motions for summary judgment until the expiration of the discovery deadlines.

On October 2, 2006, after the discovery deadlines had expired, the master heard the defendants' motion for summary judgment. Sixteen days later, the master issued an order granting the defendants' motion. The master found Gupta testified he was not an expert in the field of neurology or emergency medicine; had never been involved in the diagnosis and treatment of a patient with spinal hematoma; had no criticisms of the nursing staff at the emergency room,

or of Kohli; stated Kohli administered the standard of care relative to the care and treatment of Guinan; did not have any material experience in an emergency room in the United States; was unwilling to comment on the performance of emergency room physicians; and did not offer any opinion that any act of the defendants was the proximate cause of any of Guinan's injuries.

Additionally, the master found the time for discovery had expired, and Guinan had a full and fair opportunity to complete discovery. Accordingly, the master granted defendants' motion for summary judgment because Guinan was without expert testimony to create a genuine issue of material fact with respect to his claims of medical negligence against the defendants. This appeal followed.

## STANDARD OF REVIEW

"Since it is a drastic remedy, summary judgment 'should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues.' " *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991) (quoting *Watson v. S. Ry. Co.*, 420 F.Supp. 483, 486 (D.S.C.1975)). An appellate court reviews the grant of summary judgment under the same standard applied by the circuit court. *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006). The circuit court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David*, 367 S.C. at 250, 626 S.E.2d at 5. Summary judgment "must not be granted until the opposing

party has had a full and fair opportunity to complete discovery. Nonetheless, the nonmoving party must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is 'not merely engaged in a "fishing expedition." ' " *Dawkins v. Fields,* 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003) (quoting *Baughman,* 306 S.C. at 112, 410 S.E.2d at 544) (internal citation omitted).

## LAW/ANALYSIS

### I. Incomplete Discovery

Guinan contends discovery was incomplete because Hilton Head Regional failed to produce x-rays until the day of the summary judgment hearing and he had not received the emergency telephone records from Hilton Head Regional or the phone company.[4] We disagree.

In *Dawkins v. Fields,* 354 S.C. 58, 71, 580 S.E.2d 433, 439–40 (2003), our supreme court rejected Dawkins' "argument that summary judgment was premature because they did not have a full and fair opportunity for discovery." A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case, and why further discovery would uncover additional relevant evidence and cre-

---

4. Hilton Head Regional asserts in its respondent's brief that the discovery issue of whether Guinan could name an additional expert is unpreserved for review because it was not raised to the master. However, the issue was raised to the master during the summary judgment motion hearing, and ruled upon in the master's order. While this issue is preserved for our review, it appears to be waived on appeal. *See* Rule 208(b)(1)(D), SCACR (stating an issue on appeal must be argued in the appellate brief). Guinan does not argue discovery was incomplete because he was not allowed to name an additional expert witness in his appellate brief. The only specific arguments regarding incomplete discovery revolve around the phone records and x-rays. However, if the court were to determine the additional expert witness testimony was not abandoned on appeal, we believe the argument would ultimately fail because the discovery deadlines had expired, Guinan was afforded a full and fair opportunity to conduct discovery, and Guinan failed on appeal to demonstrate further discovery would uncover any additional relevant evidence or create a genuine issue of material fact.

ate a genuine issue of material fact. *Id.* at 71, 580 S.E.2d at 439–40.

■ Here, Guinan alleges the phone records would reveal how long the blood thinner was administered, and the x-rays would prove Guinan did not have any vascular problem early on, leaving epidural hematoma as the only possible diagnosis. However, the length of time the blood thinner was administered had no adverse effect on Guinan's condition. Accordingly, we believe the master did not err in hearing the defendants' summary judgment motion because the discovery deadlines had expired and Guinan was afforded a full and fair opportunity to conduct discovery. Moreover, on appeal, Guinan fails to demonstrate further discovery would uncover additional relevant evidence or create a genuine issue of material fact.

## II. Gupta's Testimony

■ Guinan maintains the master erred in granting the defendants' general summary judgment motion when Gupta's testimony "clearly implicated" the defendants in deviations from the standard of care. We disagree.

A physician commits malpractice by not exercising that degree of skill and learning that is ordinarily possessed and exercised by members of the profession in good standing acting in the same or similar circumstances. Additionally, medical malpractice lawsuits have specific requirements that must be satisfied in order for a genuine factual issue to exist. Specifically, a plaintiff alleging medical malpractice must provide evidence showing (1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendants' field of medicine under the same or similar circumstances, and (2) that the defendants departed from the recognized and generally accepted standards. Also, the plaintiff must show that the defendants' departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages. The plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject

matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants.

*David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247–48, 626 S.E.2d 1, 3–4 (2006) (internal citations omitted).

■ Additionally, "[o]nce employed, a physician must attend the case as long as it requires attention, unless the relation of physician and patient is ended by mutual consent or is revoked by the dismissal of the physician. A physician cannot abandon a case without reasonable notice to the patient." *Johnston v. Ward*, 288 S.C. 603, 610, 344 S.E.2d 166, 170 (1986) (internal citations omitted), *overruled on other grounds by Spahn v. Town of Port Royal*, 330 S.C. 168, 172–174, 499 S.E.2d 205, 207–208 (1998).

■ Dr. Gupta testified he was an expert in anesthesiology and pain management, but stated he did not consider himself an expert in emergency medicine or neurology. Additionally, Gupta asserted he did not have much exposure to emergency rooms in the United States. Gupta stated the only issue in the case was the delay in diagnosis. Instead of indicating which doctor was at fault for the delay in diagnosis, Gupta discusses the course of action he would have taken, but does not state any of the defendants deviated from the standard of care. However, Gupta stated every minute is critical to a patient developing paralysis, and the prognosis is better if surgery is performed eight to twelve hours after the onset of symptoms. When asked directly who caused the delay in diagnosis, Gupta responded:

> Dr. Perez did call Dr. Zitello prior to him sending [Guinan] to the emergency room. In fact, as far as I know, he called either immediately after seeing the patient in his office, or he called even before. I do not exactly know the sequence of events. But if Dr. Zitello is—or anybody who is performing this particular procedure is told that a patient is having weakness in the legs and is having severe pain in the chest radiating to the upper extremities, that itself is enough to immediately flag—put a red flag in the injectionist that this is cervical hematoma. And Dr. Zitello should have picked up the diagnosis even on the telephone itself.

However, Gupta next stated he had never been involved with diagnosing spinal hematoma.

With regard to Hilton Head Regional's vicarious liability through its emergency room nursing personnel, Gupta testified he did not have any criticisms. Additionally, during direct examination at his deposition, Gupta stated he had no criticisms of Kohli's performance. On cross-examination, Kohli's attorney asked: "Can I take it then that Dr. Kohli, in so far as you're concerned, adhered to the standard of care relative to the care and treatment he rendered to Mr. Guinan?" Dr. Gupta responded: "That's correct."

Gupta testified he did not have any criticisms of how Zitello administered the cervical epidural steroid injection. However, when asked what he would have done if he had been in Zitello's position, he replied:

A: If I get a call from a physician regarding just the chest pain itself, I would rather tell them to go ahead with the cardiac even to work. But I would certainly ask him if the patient is having any shooting pain in the upper extremities, or is he developing any weakness in the leg. In that event, I would tell the physician who's calling me that I will be right over, and I will see the patient myself.

Q: And that would be the standard of care?

A: That would be my standard of care.

Q: You think that would be the standard of care for someone in your profession that's doing this?

A: I think so.

 We find summary judgment was proper because Guinan failed to provide evidence, through his expert witness, showing the defendants departed from the recognized and generally accepted standards of average, competent practitioners in their field of medicine under the same or similar circumstances. The most damaging portion of Gupta's testimony is his statement that Zitello deviated from Gupta's personal standard of care; however, we do not find that testimony sufficient to withstand summary judgment because it does not state Zitello deviated from **the generally accepted standard** of care. More importantly, Guinan failed to show defendants' alleged departure from the generally recognized

practices and procedures was the proximate cause of his injuries.

## CONCLUSION

Accordingly, the master-in-equity is **AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.