**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Bonnie Wall, individually and derivatively, and Walter B. Wall, Jr., Appellants,

v.

Jonathan Dye, Shaun Dye, Shellmore Homeowners' Association, Inc, and John H. Chakides, Jr., individually and in his capacity as Director of Shellmore Homeowners' Association, Inc., Respondents.

Appellate Case No. 2021-001014

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

Unpublished Opinion No. 2024-UP-254
Heard February 8, 2024 – Filed July 10, 2024

**AFFIRMED**

Ian S. Ford and Ainsley Fisher Tillman, both of Ford Wallace Thomson LLC, of Charleston, for Appellants.

Lawrence Sidney Connor, IV, of Surfside Beach, for Respondents Shellmore Homeowners' Association, Inc. and John H. Chakides.

Andrew Marvin Connor, of Connor Law, PC, of Mount Pleasant, for Respondents Jonathan Dye and Shaun Dye.

**PER CURIAM:**  Bonnie Wall and Walter B. Wall, Jr. (collectively, the Walls) appeal the master-in-equity's order granting summary judgment to Johnathan Dye, Shaun Dye, and Shellmore Homeowners' Association, Inc. (collectively, Respondents) and denying the Walls' motions for partial summary judgment and to compel discovery.  We affirm.

## FACTS/PROCEDURAL HISTORY

Shellmore is a waterfront subdivision in McClellanville, South Carolina, that consists of fourteen lots subject to a Declaration of Covenants (the Declaration). The Shellmore Homeowners' Association (the HOA) is tasked with enforcing the restrictive covenants of the Declaration.  Article V, Section 1 of the Declaration states:

> Architectural Control. No building, fence, wall or other structure shall be commenced, erected or maintained upon the Properties, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Board of Directors of the Association, or by an architectural committee composed of three (3) or more representatives appointed by the Board.  In the event said Board, or its designated committee, fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, approval will not be required and this Article will be deemed to have been fully complied with.

Article V, Section 8 of the Declaration addresses docks and sets forth "[n]o boat houses, docks, piers, or wharves shall be constructed on any lot without first obtaining the written approval of the [HOA], or its designated representative."

Jonathan Dye and Shaun Dye (collectively, the Dyes) own 945 Shellmore Lane within the Shellmore subdivision and submitted a permit application to construct a covered dock to the South Carolina Department of Health and Environmental Control's Office of Ocean and Coastal Resource Management (OCRM) and the United States Army Corps of Engineers in January 2020. The Dyes submitted the same plans to the HOA's Architectural Review Committee (the ARC). The ARC approved the Dyes' plans for a covered dock and the HOA Board of Directors (the Board) affirmed the ARC's decision. Later, the ARC approved the Dyes' revised plans for the covered dock.

OCRM issued a permit to the Dyes for the construction of their dock, whereupon the Dyes began construction. The Walls, immediate neighbors of the Dyes, then commenced the underlying action by filing a petition for a temporary injunction and a verified complaint. The Walls sought to block the construction of the dock and asserted causes of action for injunction, declaratory judgment, breach of restrictive covenants, breach of fiduciary duty, civil conspiracy, and nuisance.

The master granted a preliminary injunction against the Dyes' construction of the dock and ordered all parties to file motions for summary judgment. The Dyes filed motions for summary judgment and to dissolve the temporary injunction, and the HOA filed a motion for summary judgment. Additionally, the Walls filed a motion for partial summary judgment. The master conducted a hearing on the motions, dissolved the temporary injunction, granted summary judgment as to certain causes of action, and ordered the parties to resolve the remaining issues by mediation or a vote at the annual HOA meeting in January 2021.

The Dyes completed construction of the dock in December 2020 and moved for a vote of the HOA members at the annual meeting as ordered by the master. The Dyes' motion was approved with nine votes in favor and five votes against. The Dyes and the Walls renewed their motions for summary judgment to the master, and the Walls also moved to compel discovery.

The master granted the Dyes' motion for summary judgment, denied the Walls' motion for partial summary judgment, and found the Walls' motion to compel discovery moot. In its order, the master found the Declaration to be unambiguous and covered docks unprohibited due to Article V, Section 8's reference to "boathouses." Additionally, the master found no common scheme of development prohibited covered docks because no evidence in the record predated the first sale of a lot that barred such construction. Furthermore, the master determined the HOA properly designated the ARC with authority to review plans for the dock and

the Dyes received approval from the ARC prior to construction. The master denied the Walls' motion to reconsider, and this appeal followed.

## ISSUES ON APPEAL

I. Did the master err in granting summary judgment before discovery could be conducted?

II. Did the master err in holding the Dyes obtained the requisite written approval for their covered dock prior to its construction?

III. Did the approval of the covered dock violate the Declaration and statutory law?

IV. Did the HOA's vote at the annual meeting remedy Respondents' alleged violations of the Declaration and statutory law?

## STANDARD OF REVIEW

"In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court." *Hawkins v. City of Greenville*, 358 S.C. 280, 289, 594 S.E.2d 557, 562 (Ct. App. 2004). "[T]he proper standard is the 'genuine issue of material fact' standard set forth in the text of [] Rule 56[(c), SCRCP]." *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023). "Summary judgment is proper when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Hawkins*, 358 S.C. at 289, 594 S.E.2d at 562 (quoting Rule 56(c), SCRCP).

## LAW/ANALYSIS

### I. Summary Judgment Prior to Discovery

The Walls argue the master's grant of summary judgment was premature because "[d]iscovery was critical to [their] prosecution of the case, as well as to their defense against summary judgment motions filed by . . . Respondents . . . ." They contend factual questions precluded summary judgment on the issues of (1) the common scheme of development, (2) the "procedural propriety" of the Dyes' and Board's actions, (3) the validity of the ARC, and (4) the validity of the members'

vote at the annual meeting.  Additionally, they cite *Gary v. Askew*[1] and aver that summary judgment before a party had a "full and fair opportunity to conduct discovery is premature."  We disagree.

"Since it is a drastic remedy, summary judgment 'should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues.'" *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991) (quoting *Watson v. S. Ry. Co.*, 420 F. Supp. 483, 486 (D.S.C. 1975)).  "This means, among other things, that summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery."  *Id.*

"A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case, and why further discovery would uncover additional relevant evidence and create a genuine issue of material fact."  *Guinan v. Tenet Healthsystems of Hilton Head, Inc.*, 383 S.C. 48, 54–55, 677 S.E.2d 32, 36 (Ct. App. 2009).  In *Guinan*, this court held the circuit court's grant of summary judgment was not premature because the party opposing summary judgment failed to demonstrate that "further discovery would uncover additional relevant evidence or create a genuine issue of material fact."  *Id.* at 55, 677 S.E.2d at 36.  Rule 56(c) of the SCRCP states:

> The motion shall be served at least 10 days before the time fixed for the hearing.  The adverse party may serve opposing affidavits not later than two days before the hearing.  The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

---

[1] 423 S.C. 47, 49, 813 S.E.2d 717, 718 (2018) ("Because the record contains minimal evidence about the nature of the collision and the parties have not had an opportunity to conduct significant discovery, we find summary judgment is premature.").

We hold the master did not err by granting Respondents' motions for summary judgment prior to discovery because discovery would not uncover additional evidence or create a genuine issue of material fact. *See Guinan*, 383 S.C. at 55, 677 S.E.2d at 36 (holding the circuit court's grant of summary judgment was not premature because the party opposing summary judgment failed to demonstrate that "further discovery would uncover additional relevant evidence or create a genuine issue of material fact"). The Walls argue the Declaration prohibits the construction of a covered dock and the Dyes failed to receive the proper authorization prior to construction. This is a legal question that requires analysis of the Declaration and relevant statutes, not additional facts. *See Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011) ("Where cross[-]motions for summary judgment are filed, the parties concede the issue before us should be decided as a matter of law."). The Walls' attempt to create an issue of fact through references to four affidavits; however, we find these affidavits were not admissible because they contain conclusions of law. Thus, the master's grant of summary judgment was proper.

## II.    Written Approval for the Dock

The Walls argue the master erred in granting summary judgment "on the premise that the 'undisputed record evidence indicates that the Dyes properly submitted and received appropriate approval for their covered dock.'" They contend neither the Dyes nor the HOA followed the required process necessary to gain approval from the Board for construction of the dock. Primarily, the Walls claim the Dyes violated the Declaration by completing construction of their dock prior to receiving approval. Additionally, they argue the master's finding that their affidavits were inadmissible erroneously weighed the evidence, made credibility determinations, and failed to view the evidence in a light most favorable to the Walls.

Initially, we find the master's determination that the affidavits were inadmissible was not error. *See Hall v. Fedor*, 349 S.C. 169, 175, 561 S.E.2d 654, 657 (Ct. App. 2002) ("[M]aterials used to support or refute a motion for summary judgment must be those which would be admissible in evidence."); *Wright v. Craft*, 372 S.C. 1, 33, 640 S.E.2d 486, 503 (Ct. App. 2006) ("The admissibility of evidence is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion or the commission of legal error prejudicing the defendant."); *Dawkins v. Fields*, 354 S.C. 58, 65, 580 S.E.2d 433, 437 (2003) (holding an expert's affidavit was inadmissible because it "primarily contained legal arguments and conclusions"). The four affidavits submitted by the Walls contain legal arguments and conclusions that covered docks are not permitted

within Shellmore. Claims such as these require analysis of the Declaration and appropriate statutes—a job the master was well-equipped to handle.

Next, we find the record demonstrates the Walls received the required written approval prior to constructing their dock. The Declaration states that written approval from "the [HOA] or its designated representative" is required prior to constructing any dock. Article V, Section 1 states:

> No building, fence, wall or other structure shall be commenced, erected or maintained upon the Properties, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Board of Directors of the [HOA], *or by an architectural committee composed of three (3) or more representatives appointed by the Board.* In the event said Board, or its designated committee, fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, approval will not be required and this Article will be deemed to have been fully complied with.

(emphasis added).

The Declaration clearly establishes that the Board or its designated representative can approve plans for a dock. Here, the Board's designated representative was the ARC—which is expressly permitted to approve structures, under Article V, Section 1. The record is clear that the ARC received the Dyes' plans for a covered dock and approved them. Thus, there is no genuine issue of fact and summary judgment on this issue was proper.

### III.  Violation of the Declaration and Statutory Law

The Walls argue Respondents did not comply with the Declaration and statutory law to approve the dock. First, they contend the ARC was invalid under section 33-31-825(a) of the South Carolina Code (2006) because the ARC was not comprised of two or more directors. Second, they maintain the ARC is without

authority to approve of the Dock under section 27-30-130 of the South Carolina Code (Supp. 2023) because the HOA failed to record any bylaws, rules, or designations assigning authority to the ARC to make such decisions. Third, they aver the Declaration established a common plan or scheme because it requires "harmony of external design" and a covered dock had never been previously approved. We disagree.

### A. ARC Invalid Under Section 33-31-825(a)

"Unless prohibited or limited by the articles or bylaws, a board of directors may create one or more committees of the board and appoint members of the board to serve on them. Each committee shall have two or more directors who serve at the pleasure of the board." § 33-31-825(a). "The articles may authorize a person or persons to exercise some or all of the powers which would otherwise be exercised by a board." S.C. Code Ann. § 33-31-801(c) (2006). "To the extent so authorized, the person or persons shall have the duties and responsibilities of the directors, and the directors shall be relieved to that extent from the duties and responsibilities." *Id.*

We find section 33-31-801(c) permits the HOA to appoint non-board members to serve on a committee such as the ARC. *See* § 33-31-801(c) ("The articles may authorize a person or persons to exercise some or all of the powers which would otherwise be exercised by a board."). Here, the Declaration provides for the creation of the ARC and permits the Board to appoint members to it. The Declaration does not specify the ARC must only consist of Board members.

### B. ARC Without Authority Under Section 27-30-130

Section 27-30-130 of the South Carolina Code (Supp. 2023) requires an HOA to file "governing documents" and "rules, regulations, and amendments to rules and regulation" in order to have authority. "Governing documents" are defined as "declaration, master deeds, or bylaws, or any amendments to the declaration, master deeds, or bylaws." S.C. Code Ann. § 27-30-120(4) (Supp. 2023). In this case, the record is clear that the Declaration and bylaws of the HOA were recorded. Furthermore, no statute requires that an HOA must file a document assigning authority to an architectural review committee as argued by the Walls. Therefore, the Walls' argument that the ARC was without statutory authority is without merit.

### C. Declaration Prohibits Covered Docks

We hold covered docks are not prohibited by the Declaration, common plan or scheme, or a 2016 vote by the members of the HOA to prohibit covered docks. First, we find the restrictive covenants within the Declaration do not prohibit covered docks. *See S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001) ("The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms . . . ." (emphasis omitted) (quoting *Taylor v. Lindsey*, 332 S.C. 1, 4, 498 S.E.2d 862, 864 (1998))); *id.* ("A restriction on the use of property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property." (emphasis omitted) (quoting *Taylor*, 332 S.C. at 5, 498 S.E.2d at 864)). The Declaration does not expressly state that covered docks are prohibited within Shellmore. Instead, Article V, section 8 of the Declaration—which covers the construction of docks— states that boathouses are permitted as long as written approval is obtained. We find a boathouse is essentially a covered dock.

Second, we find covered docks are not prohibited by "harmony of external design" or common plan or scheme within the Shellmore community. "An easement restricting the use of property must be created in express terms or by plain and unmistakable implication." *Gambrell v. Schriver*, 312 S.C. 354, 358, 440 S.E.2d 393, 395 (Ct. App. 1994). "Where they arise by implication and subdivided land is involved, the restrictions are said to create a reciprocal negative easement." *Id.* "[F]our elements must be established to show a reciprocal negative easement. There must be: (1) a common grantor, (2) a designation of land subject to restrictions, (3) a general plan or scheme of restrictions, and (4) covenants running with the land in accordance with such plan or scheme." *Id.* "Generally, the developer must establish the general scheme of development before any lots are sold." *Id.* "All doubts regarding the creation of an implied reciprocal negative easement must be resolved in favor of the freedom of land from restriction." *Id.* Here, there is no "unmistakable implication" that covered docks are prohibited. As discussed above, the Declaration expressly anticipates the potential for covered docks by mentioning boathouses. Furthermore, the record contains no evidence predating the first sale of a lot within Shellmore that prohibited the construction of a covered dock. Additionally, the Walls' argument that no covered dock had been previously approved is unavailing. We find the HOA's prior denial of covered docks and the lack of these structures within Shellmore does not create an "unmistakable implication" such that a prohibition on covered docks is created. Such prior docks could have been denied for reasons other than the inclusion of a roof.

Third, we find a vote by the HOA in 2016 to prohibit covered docks was ineffective to amend the Declaration. The Declaration requires 75% of the HOA vote in favor to amend its restrictive covenants. While the record contains minutes from a 2016 HOA meeting that demonstrates the members of the HOA voted to prohibit covered docks, the record contains no evidence that vote met the 75% as is required to amend the Declaration. Moreover, the vote was never memorialized or recorded to be an effective amendment to the Declaration.

## IV. HOA Annual Meeting Vote

The Walls argue the master erred by relying on a post construction vote that approved the dock. They contend the grant of summary judgment was erroneous because the order denying their motion for reconsideration acknowledged that "[b]oth sides contend this membership vote was not authorized by the covenants and the law." We disagree. Based on our foregoing analysis, the Dyes complied with the Declaration's mandated approval process of the dock; thus, any such vote by the membership of Shellmore following the ARC's approval was irrelevant to the propriety of the Dyes' dock.

## CONCLUSION

Accordingly, the master's order is

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and HEWITT, JJ., concur.**